IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION FILE |
| MICHAEL KENT, et al. | NO. 4:17-CR-0039-JPB-WEJ |
| Defendants. | |

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on defendant Michael Kent's Motions to Suppress [267] and to Compel Disclosure of Confidential Informant [249], and defendant Cedric Sams's related Motion for Disclosure of Informants [266]. Mr. Kent moves to suppress evidence that the Government seized pursuant to a search warrant directed to Instagram LLC because he claims that the agent's Affidavit failed to establish probable cause connecting Mr. Kent's Instagram account to any criminal activity. Mr. Kent and Mr. Sams also move to compel the Government to disclose the identity of a confidential informant ("CD-1") named in the Affidavit. The Government opposes all Motions [282, 283].

I. **BACKGROUND**

On January 29, 2018, the undersigned United States Magistrate Judge found probable cause and signed a search warrant for the content in an electronic account from the social media network Instagram. (Affidavit [267-1] 20-25.) In the Affidavit in support of the application for a search warrant (the "Affidavit"), FBI Task Force Agent Andrew Jerram detailed the lengthy investigation into the criminal activities of the gang "135 PIRUS." (Id. 1-12.) The Affidavit sets out many details of the alleged ongoing criminal activity by gang members in furtherance of their enterprise, including murder. (Id.)

The Affidavit and Attachment B thereto set out a two-stage process for obtaining and seizing the requested information. (Affidavit 21-25.) Under Section I of Attachment B, Instagram was directed to collect and disclose to the Government essentially all information relating to Mr. Kent's Instagram account within Instagram's possession, custody, or control, regardless of date or subject matter. (Id. at 21-23.) Pursuant to Section II of Attachment B, the warrant then authorized the Government to seize all information described in Section I from May 13, 2017 to the date the warrant was signed that "constitute[d] fruits, evidence and instrumentalities of violation of [18 U.S.C. §§ 1959, 1962(d)] . . . ," including:

a. Membership or association with the 135 PIRU gang;

    b. The murder of Qualeef Rhodes on or about June 4, 2017;

    c. Evidence of the commission of a RICO conspiracy, including those racketeering acts set forth in 18 U.S.C. § 1961, and evidence of the existence of the enterprise, and members and associates of that enterprise;

    d. Evidence of the commission of violent racketeering acts, including murder, kidnapping, assault with a dangerous weapon, and aiding and abetting any of said acts, and evidence regarding the existence of an enterprise involved in said racketeering activity, in violation of 18 U.S.C. § 1959 (Violent Crime in Aid of Racketeering); and

    e. Records related to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

(Id. at 23-24.)

The Affidavit also sets out that CD-1 made a statement in a proffer interview that Mr. Kent had contacted alleged 135 PIRU members Christopher Nwanjoku to complain about Mr. Rhodes' cooperation with law enforcement and Jennifer Foutz to complain about the "snitching" going on in the gang shortly before Mr. Rhodes was murdered. (Affidavit 11-12.)

## II.   DISCUSSION

### A.   Motion to Suppress

The Fourth Amendment provides as follows:

> The rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

3

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

When executing a search and seizure warrant, law enforcement officers must comply with all four of the requirements of the Fourth Amendment: (1) the warrant must be based on probable cause,[1] (2) the probable cause must be supported by sworn testimony or an affidavit, (3) the place to be searched must be described with particularity, and (4) the evidence to be seized must be particularly described. Groh v. Ramirez, 540 U.S. 551, 557 (2004).  The exclusionary rule, in turn, forbids the use of evidence obtained in violation of the requirements of the Fourth Amendment. Herring v. United States, 555 U.S. 135, 139 (2009).

In United States v. Leon, 468 U.S. 897 (1984), however, the Supreme Court recognized the good-faith exception to the exclusionary rule for searches conducted pursuant to warrants. Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court found that this purpose would not be served,

---

[1] "Probable cause" is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam).

and the exclusionary rule should not be applied, when an officer, acting with objective good faith, has obtained a search warrant from a judge and acted within its scope. Id. at 920-21.

Nonetheless, the Leon Court noted four situations in which the suppression of evidence would still be appropriate: (1) when the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) when the judicial officer wholly abandons his judicial role; (3) when the warrant is issued on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant is so facially deficient that an officer could not reasonably presume it to be valid. Leon, 468 U.S. at 923.

Upon reviewing the Affidavit, the undersigned **REPORTS** that there was probable cause to issue the search warrant. The Affidavit includes a lengthy factual basis setting out how 135 PIRU gang members use social media sites, like Instagram, to communicate and promote gang matters. (Affidavit 12-13.) Specifically, Mr. Kent's Instagram account, which was set to "public" and thus viewable by any person with an Internet connection, contained pictures of him posing with other 135 PIRU gang members who are suspects in the murder of Mr. Rhodes and displaying large quantities of marijuana, guns, and hundreds of dollars. (Id. at 11.) Moreover, hand-drawn artwork depicting a rat with a revolver in its

mouth pointing to the words "stop snitching" was seized pursuant to a search warrant from a truck believed to be involved in the murder of Mr. Rhodes. (Id. at 12.) This same artwork was posted to Mr. Kent's Instagram account, along with other drawings that are similar in size, skill level, and style that he indicated he had created. (Id.) In sum, the individual facts regarding Mr. Kent, taken together with the recitation in the Affidavit of how the 135 PIRU members use Instagram to communicate and promote gang matters, along with the experience and expertise of the FBI agent, is sufficient to show that further evidence would likely be found in the defendant's Instagram account.

Assuming, arguendo, that probable cause did not exist, the warrant falls within the Leon good-faith exception. See United States v. Panky, No. 4:17-CR-23-11-HLM-WEJ, 2017 WL 9478491, at *2-3 (N.D. Ga. Nov. 28, 2017), R&R adopted, 2017 WL 6372242 (N.D. Ga. Dec. 13, 2017) (declining to consider whether search warrant for data from Facebook violated the Fourth Amendment because warrant fell within Leon exception); see also United States v. Wright, No. CR 117-046, 2018 WL 1177939, at *6 (S.D. Ga. Feb. 7, 2018), R&R adopted, No. CR 117-046, 2018 WL 1176839 (S.D. Ga. Mar. 6, 2018) ("the Facebook warrant at issue here is subject to the good faith exception to the extent, if any, it may be overly broad").

Likewise, the warrant here was not so facially deficient that the executing officers could not have presumed it to be valid. The warrant was constrained to a specific location (i.e. the account name "WIKKEDRU" associated with Mr. Kent) and to a specific time period (i.e., since May 13, 2017—the date of Mr. Rhodes's murder—to the date the warrant was signed). Thus, the warrant was not "lacking in indicia of probable cause" and was sufficiently particular. Leon, 468 U.S. at 923. Additionally, Mr. Kent has also not alleged that the authorizing Court "abandoned" its detached role or that the Court was misled by Agent Jerram's Affidavit. Therefore, it was reasonable for the agent to rely on the Instagram warrant under the totality of the circumstances. Accordingly, the undersigned **RECOMMENDS** that defendant's Motion to Suppress be **DENIED**.

### B.   Motions to Compel Disclosure of Confidential Informant

Mr. Kent argues that this Court should compel the Government to disclose the identity of CD-1 because he believes exculpatory evidence could be learned from CD-1. (Def. Kent's Mot. to Compel Disclosure of Confidential Informant [249] 2.) Mr. Sams argues for disclosure because of his interest in interviewing and investigating any confidential informants. (See Def. Sams's Mot. for Disclosure of Informants [266].) In doing so, Mr. Kent and Mr. Sams rely on Brady

v. Maryland, 373 U.S. 83 (1963), and Roviaro v. United States, 353 U.S. 53 (1957). The Government rebuts these arguments. (See Gov't Opp'n Resps. [282, 283].)

In Roviaro, the Supreme Court recognized that the government has the privilege to withhold from disclosure the identity of its informant, but that this privilege is limited. 353 U.S. at 53. If disclosure of an informant's identity is "relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must give way." Id. at 60-61. In balancing these competing interests, courts in the Eleventh Circuit consider "(1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure." United States v. Flores, 572 F.3d 1254, 1265 (11th Cir. 2009) (per curiam). The burden is on the defendant to establish that these factors in a particular case counsel in favor of disclosure by way of sufficiently specific demonstration of the relevance and potential helpfulness of the informers' testimony. See Rugendorf v. United States, 376 U.S. 528, 534-35 (1964). "Mere conjecture about the possible relevance of the informant's testimony is insufficient." United States v. Young, 161 F. App'x 922, 927 (11th Cir. 2006) (per curiam).

To the extent Mr. Kent seeks to compel the Government to disclose CD-1's identity to challenge probable cause to search his Instagram account, "the rule is well-established that the Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search warrant." United States v. Mays, No. 1:18-CR-15-AT-JKL, 2018 WL 7016346, at *5 (N.D. Ga. Sept. 18, 2018), R&R adopted sub nom. United States v. Shelton, No. 1:18-CR-00015-AT-JKL, 2018 WL 6381252 (N.D. Ga. Dec. 6, 2018) (quoting United States v. Mendoza, 433 F.2d 891, 894 (5th Cir. 1970)); see United States v. Booker, 131 F. App'x 234, 241 (11th Cir. 2005) (per curiam) (district court did not abuse discretion in denying motion to disclose criminal informant where informant's identity was only relevant to probable cause for search warrant). Thus, this Court will not compel disclosure of CD-1's identity for this purpose.

Furthermore, this case is distinct from Roviaro such that disclosure is not necessary. Unlike the case in Roviaro, here the Government intends to call CD-1 as a witness at trial (Gov't Opp'n Resp. [282] 10). See Banks v. Dretke, 540 U.S. 668, 697 (2004) (stating the issue in Roviaro was whether prosecution should have disclosed identity of non-testifying informant). Moreover, the Government represents that it will disclose all Brady and Giglio materials relating to informants who testify at trial when it discloses Jencks Act material, which under local practice

is shortly before trial. (Gov't Opp'n Resp. [282] 12-13.) As such, defendant will learn the identity of CD-1 and will obtain the Jencks Act, Giglio, and Brady materials relating to CD-1 prior to his or her testimony, thereby alleviating the concerns raised in Roviaro. See United States v. Tejeda, 974 F.2d 210, 217 (1st Cir. 1992) ("The disclosure requirement in Roviaro was predicated on the failure of the prosecution to make *either* the informant *or* the informant's identity available to the defense in a case where the informant was *never called as a witness*.") (emphasis in original). Therefore, the Government need not disclose CD-1's identity because this case does not entail the concerns present in Roviaro.

Likewise, the Roviaro factors do not counsel disclosure of CD-1's identity at this time. With regard to the first factor—the extent of CD-1's participation in the criminal activity—the analysis is neutral at best. The search warrant provides little information about CD-1. The warrant only lays out that CD-1 had knowledge of Mr. Kent contacting Mr. Nwanjoku and Ms. Foutz to complain about Mr. Rhodes and "snitching" in the gang. CD-1 also states that he is extremely close with Maurice Kent and refers to him as "my brother." (Affidavit 11-12.) It is unclear to what extent, if any, CD-1 participated in the alleged crimes committed by defendants. The second factor—the centrality of the disclosure to the defendant's asserted defense—weighs against disclosure. Mr. Kent only says that

10

he "believes" exculpatory evidence will be learned from CD-1 and Mr. Sams only states that CD-1 is a "critical witness" who must be investigated. These reasons in favor of disclosure are speculative at best and none relate to either defendants asserted defense(s). Finally, the third factor—the Government's interest in non-disclosure—weighs in favor of non-disclosure. In this case, Mr. Sams and Mr. Kent were allegedly involved with the murder of Mr. Rhodes, who was killed for cooperating with police. The fact that this case involves the murder of a potential witness who was killed for cooperating with law enforcement makes the Government's interest in non-disclosure readily apparent. Thus, even if this case was controlled by <u>Roviaro</u>, the factors weigh in favor of non-disclosure.

## III.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that defendant Michael Kent's Motion to Suppress [267] and the Motions to Disclose Confidential Informant filed by Michael Kent [249] and Cedric Sams [266] be **DENIED**.

**SO RECOMMENDED**, this 5th day of November, 2019.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE